# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: RENAE D. BAROS,      No. 7-05-19110 ML

    Debtor.

_____

**EDDIE R. ANDREWS,**

    Plaintiff,

v.      Adv. No. 05-1275 M

**RENAE D. BAROS,**

    Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court after trial on the merits of Plaintiff's Complaint seeking to declare non-dischargeable a debt pursuant to 11 U.S.C. §§ 523(a)(4), (a)(6) and (a)(15).[1] Having reviewed the evidence, arguments of counsel, and the applicable principles of law, and being otherwise sufficiently informed, the Court determines that it will grant the relief requested. In connection with this conclusion, the Court finds:

1. Defendant, Renae D. Baros, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 7, 2005.

2. Plaintiff alleges that he is owed a debt in the amount of $58,390.00 arising from Defendant's misappropriation of several items of Plaintiff's personal property, which were left at the residence occupied by Plaintiff and Defendant before their divorce in 2003. Plaintiff

---

[1] All statutory references will be to title 11 of the United States Code unless otherwise indicated.

1

contends that the value of the misappropriated property represents a debt that is non-dischargeable because it arose from either larceny or willful and malicious injury committed by Defendant.[2]

3. In her original Schedule F, Defendant listed a debt to Plaintiff in the amount of $59,000.00 without indicating that it was disputed, contingent or unliquidated. Doc. 1; No. 05-19110.

4. On February 7, 2007, one day before the trial of this adversary proceeding, Defendant filed an Amended Schedule F stating that the debt to Plaintiff in the amount of $59,000.00 was disputed. Doc. 35; No. 05-19110.

5. In the summer of 2001, Plaintiff was required to leave the marital residence shared with his then wife, Defendant Renae Baros. Plaintiff left most of his personal property in the marital residence located in El Paso, Texas.

6. Defendant filed a dissolution of marriage proceeding in 2002 in El Paso, Texas. *See In the Matter of Marriage of Renae Dolores Andrews a/k/a Renae Dolores Baros and Eddie Ray Andrews, and The Interest of Cherilynn Andrews, a Child*, Cause No. 2001-CM5417, 65th Judicial District Court, El Paso County, Texas (the "Texas court"). Because of the contentious nature of the proceedings and pursuant to an order from the Texas court, an inventory of

---

[2] Though the prayer for relief contained in the Complaint contained a request for denial of the Defendant's discharge pursuant to 11 U.S.C. § 727, none of the allegations in the body of the Complaint appear to state a cause of action for denial of the Defendant's discharge under 11 U.S.C. § 727. Counsel for Plaintiff had confirmed that Plaintiff only seeks a determination of non-dischargeability as to the debt to Plaintiff and is not seeking a denial of the Defendant's discharge.

Plaintiff conceded at trial that he could not prove the elements necessary to show that the debt is non-dischargeable under § 523(a)(15); therefore, the Court will not consider whether the debt is non-dischargeable under this section.

2

personal property was performed (the "2002 Inventory").  Def's Ex. C.

      7. The 2002 Inventory listed all personal property located at several sites: the marital residence, a rental house, Plaintiff's apartment, an airport hangar, and a self-storage unit.  It is undisputed that Plaintiff maintained control of the property at the airport hangar and the self-storage unit.

      8.  On May 21, 2003 the Texas court made an oral ruling which stated in pertinent part the following: 1) the divorce was effective on May 8, 2003, 2) Defendant had committed constructive fraud regarding a putative adoption of Defendant's child by Plaintiff; and 3) Defendant was to reimburse Plaintiff for child support paid to her.

      9.  With regard to property, the Texas court stated the following:

> Concerning the property, the property listed in [the 2002 Inventory] that is at a hanger [sic] or some storage facility, all that belongs to Mr. Andrews and all the items currently in his possession.
>
> Mrs. Andrews gets everything in her possession, except for **firearms, military and Customs memorabilia, power tools, and the Jenn Aire refrigerator** if it is still in existence.. . .

Def's Ex. K, Transcript of proceedings, 65th Judicial District Court, El Paso, Texas (emphasis added)

      10.  On September 9, 2003 a Final Decree of Divorce (the "Final Decree") was entered dissolving the marriage of Plaintiff and Defendant. Ex. A.  In the Final Decree, the Texas court listed the specific personal property awarded to Plaintiff as his separate property, which included the property in bold print above.

      11. On June 8, 2004 , after an appeal of the Final Decree, the Texas court granted Plaintiff's motion for judgment nunc pro tunc (the "judgment nunc pro tunc") stating that a previous order by the adoption court requiring Plaintiff to pay child support to Defendant, was

3

no longer in force and that Defendant requested that no child support be paid to her by Plaintiff. In the judgment nunc pro tunc, the language awarding Plaintiff his separate personal property remained unchanged.[3]

12. On September 2, 2004, Plaintiff filed a Petition for Enforcement of Contempt ("Enforcement Petition") in the State Court alleging that Defendant had failed to turn over all of the property in her possession belonging to Plaintiff as required by the Divorce Decree. The Enforcement Petition asked the State Court to order Defendant to turn over the property; or, in the alternative, pay the fair market value of the property in the amount of $58,390.00. Plf. Ex. C.

13. The Enforcement Petition lists the specific property sought by Plaintiff in Exhibits A, B and C, which includes the following 1) Firearms; 2) the Jenn Aire refrigerator; 3) U.S. Customs equipment and military memorabilia; and 4) family photos. Exhibits A-C of the Enforcement Petition are the same list of property attached to the Final Decree, except that several items were crossed off of the list. Plaintiff testified that these items were crossed off because he had those items in his possession. *See* Plf's Ex. C.

14. A hearing on the Enforcement Petition was set on October 7, 2005, but was stayed by the filing of Defendant's bankruptcy on October 10, 2005.

15. In her Answer filed in this adversary proceeding Defendant generally denies that she failed to turn over the property. Doc. 7; Adv. No. 05-1275. Defendant's Answer also denies that the debt claimed by Plaintiff "in the amount claimed in Defendant's Bankruptcy Petition would be a debt based on Defendant's larceny or willful injury." Answer ¶ 2 (Doc. No. 7; Adv. No. 05-

---

[3] Plaintiff testified that on appeal, the language regarding Defendant's fraudulent representations to the adoption court was expunged. Thus, the judgment nunc pro tunc contained no finding of fraud in connection with the putative adoption.

4

1275).

16. At trial of this matter, all exhibits were admitted by stipulation of the parties.

Discussion

**<u>The Debt</u>**

Plaintiff asks this Court to declare the debt in the amount of $58,390.00 non-dischargeable under §§ 523(a)(4) or (a)(6). As a preliminary matter, Plaintiff argues that the amount of the debt has been established because Defendant listed a debt to Plaintiff in the amount of "$59,000.00" in her Original Schedule F and did not indicate that it was disputed, contingent or unliquidated. Plaintiff argues that this admission was not effectively countered by the last-minute filing of Amended Schedule F, the day before trial, in which Defendant listed the debt in the amount of $59,000.00, but indicated that the debt was disputed. Regardless of the effect of the admission in her schedules, Defendant has placed the amount of debt at issue, although in-artfully, in her Answer stating that the debt "in the amount claimed in Defendant's Bankruptcy Petition" is not based on larceny or willful and malicious injury. Moreover, the Court has already ruled that both dischargeability and the amount of the debt are at issue in this proceeding in a previous order denying remand or abstention.[4]

To except a debt from discharge under § 523(a)(4), Plaintiff must prove two elements. The first element is whether Defendant committed larceny or embezzlement by misappropriating with intent to deprive Plaintiff of his separate personal property. The second element is the amount of damages that should be awarded to Plaintiff to compensate for the loss of the

---

[4] *See Order Denying Motion to Remand Or In The Alternative For Abstention* (Doc. 24; Adv. No. 05-1275).

5

property. Both parties recognize that due to the bankruptcy filing, the Texas court did not have the opportunity to hear the merits of the Enforcement Petition and determine whether Defendant violated the Divorce Decree by not turning over Plaintiff's personal property. In addition, the Texas court did not have the opportunity to determine the value of the property, if any, that Defendant failed to turn over. Each of those issues are now before this Court in the context of this non-dischargeability proceeding.

### Section 523(a)(4)

Section 523(a)(4) provides that a discharge under § 727 does not discharge an individual debtor from any debt, "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . ." 11 U.S.C. § 523(a)(4). Plaintiff seeks to prove by a preponderance of the evidence that Defendant committed larceny or embezzlement by misappropriating Plaintiff's separate property.

Federal law and not state law controls the meaning of "larceny" and "embezzlement" for § 523(a)(4) purposes. *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000); *Zanetti-Gierke*, 212 B.R. 375, 381 (Bankr. D. Kan. 1997). Under federal common law, a debtor commits "larceny" when he takes another's personal property with intent to convert it or deprive the owner of the property. *Bryant v. Lynch (In re Lynch)*, 315 B.R. 173, 179 (Bankr. D. Colo. 2004), *remanded on other grounds*, 2006 W.L. 2839587 (D. Colo. 2006) (bankruptcy court is not bound by the state law definition of larceny, but, rather, should follow the federal common law definition which requires intent to steal); *Bennett v. Wright (In re Wright)*, 282 B.R. 510, 516 (Bankr. M.D. Ga. 1999)("For non-dischargeability purposes, "larceny" requires a taking of property belonging to another with the intent to convert it or to permanently deprive the owner of

6

it."); *In re Neumann,* 13 B.R. 128, 131 (Bankr. Wis. 1981) ("Larceny requires a showing that the taking was accompanied by specific intent to deprive the owner of his property.").

Embezzlement, for purposes of § 523(a)(4), is the fraudulent misappropriation of property by a person to whom such property has lawfully come. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (citing, 3 Collier on Bankruptcy ¶ 523.14(3), 523-106 (15th ed.1981)). A finding of embezzlement requires proof of the following three elements: 1) property owned by another is rightfully in the possession of a person; 2) the person appropriates such property to a use other than the use for which the property was entrusted to the person; and 3) circumstances indicating fraud. *WebMD v. Sedlacek (In re Sedlacek)*, 327 B.R. 872, 880 (Bankr. E.D. Tenn. 2005). Whether a misappropriation of property is "larceny" and "embezzlement" depends on whether the debtor possesses the property lawfully. *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 789-90 (Bankr. D. Colo. 2002) (citations omitted). Both embezzlement and larceny require fraudulent intent. *Wright*, 282 B.R. at 516. Both the intent and the actual misappropriation necessary to prove embezzlement or larceny may be shown by circumstantial evidence. *Sedlacek*, 327 B.R. at 880; *see also In re Cook*, 141 B.R.777, 784 (Bankr. M.D. Ga. 1992) (finding that seller of jewelry who failed to remit proceeds to consignor and who admitted to lying to consignor about what happened to the proceeds established fraudulent intent for embezzlement under § 523(a)(4)).

At the time that Plaintiff vacated the marital residence, but before the Final Decree adjudicating which property was his separate property, Defendant had lawful possession of Plaintiff's property at the marital residence. Therefore, fraudulent misappropriation of Plaintiff's property during this time would constitute embezzlement. After the property was adjudicated as

7

separate property and Defendant was ordered to turn over the property to Plaintiff, Defendant had no right to possess the property.  Fraudulent misappropriation of the property at this time would  constitute larceny.  Regardless of the time, failure to turn over this property by keeping it or disposing of it would constitute an unlawful misappropriation of the property.  Whether the misappropriation is accompanied by intent to deprive Plaintiff of the property, is a separate requirement that would transform the misappropriation into larceny or embezzlement for purposes of non-dischargeability. *See Matter of Rose*, 934 F.2d 901, 903 (7th Cir. 1991) (upholding bankruptcy court's holding inferring intent for larceny purposes where ex-wife wrongfully took cash from safety deposit box ignoring instructions from ex-husband not to use or take control of his money).

### **The Firearms**

Plaintiff testified that the firearms that he claims are missing were stored in the garage of the marital residence.  According to the 2002 Inventory, six of the firearms were located in the airport hangar, in Plaintiff's possession.  In the list of missing firearms attached to the Enforcement Petition, these six firearms are crossed off.  Plaintiff claims that these remaining three firearms and one power scope were misappropriated by Defendant and that Defendant should compensate Plaintiff for their value as a non-dischargeable debt.  These items and their values were listed in the Enforcement Petition as follows:

1. Knight Rifle Black Powder Stainless Steel-Composite Stock, 54 Caliber $700.00
2. Pre 1964 Winchester 30-30 Carbine $800.00
3. North American Arms 22 Caliber Magnum Revolving Derringer $200
4. 3 x 9 Power Scope Off of a 22 Caliber Rifle $200.00.

*See* Enforcement Petition, Plaintiff's Ex. C.

The above values are the only evidence of value that was presented.  These items are

8

listed on Exhibit B to the Final Decree (Plf's Ex. A) as household goods, furniture, fixtures & equipment. Plaintiff testified that these firearms were at the marital residence when he left the residence in the summer of 2001, and they were still at the marital residence when he left again in November 2001 after a brief attempt at reconciliation. He testified that he has not been in the marital residence since that time. Plaintiff points to the 2002 Inventory of the marital residence, which did not list these three firearms and the scope, as evidence that Defendant disposed of those items, either by selling them, or by giving them away some time after Plaintiff left the marital residence in 2001 and before the 2002 Inventory was prepared. Defendant testified that at the time of the Final Decree, she did not have possession or control of these firearms and scope; therefore, she could not turn them over to Plaintiff. Defendant also points to the 2002 Inventory, as proof that these items were not in her possession before the Final Decree. She further testified that at the time of the 2002 Inventory, she did not live at the marital residence. She maintains that all of the firearms were stored at the airport hangar, not at the marital residence. Defendant contends that it was physically impossible to return items that were not in her possession.

Based on the evidence, the Court finds that these three firearms and one scope, were located at the marital residence at the time Plaintiff vacated the property in 2001. These items were missing when the 2002 Inventory was prepared and Plaintiff was unable to retrieve his property. The Court finds Defendant's testimony that it was physically impossible to return items that were not in her possession disingenuous. Moreover, the Court finds that Plaintiff's testimony is more credible. Because Defendant was living at the marital residence in 2001 when Plaintiff vacated the marital residence, which contained these items, and the items were missing

9

at the time of the 2002 Inventory making it impossible for Plaintiff to retrieve his property, the Court finds that Defendant misappropriated these items. Further, the Court finds that Defendant's failure to preserve possession of Plaintiff's firearms and scope and concealing the misappropriation of these items shows the requisite intent to deprive Plaintiff of possession of this property thereby making any resulting debt non-dischargeable as arising from embezzlement. The amount of this non-dischargeable debt has been established by the values placed on each item in the Enforcement Petition, which was an exhibit admitted by stipulation at trial. Without any other evidence of value, the Court finds that the damages from the embezzlement of this property, and the non-dischargeable debt, is $ 1,900.00, the total of the listed values.

### **Family Photos and Memorabilia**

Plaintiff testified that several of his family photos were displayed at the marital residence at the time he left in 2001. "Andrews Family Pictures" are listed among the household goods awarded to Plaintiff in the Final Decree. Plf's Ex. A. Plaintiff testified that when he returned to the marital residence to retrieve the photos, they were gone. Defendant testified that she never saw these photos in the marital residence and doubts that they exist.

Plaintiff testified that he had numerous government and military service memorabilia items stored at the marital residence in drawers. These items include plaques, medals, citations, Vietnam war memorabilia and Customs service memorabilia. Plaintiff testified that he had a Texaco collectors airplane bank collection that he displayed on the television at the marital residence, but these were also missing when he attempted to retrieve his property from the marital residence. The 2002 Inventory makes no mention of this collection. Plaintiff testified

that he purchased 10 to 12 items of his Vietnam memorabilia and some badges from his federal Customs service from junk stores and pawn shops. Plaintiff testified that he paid the $75.00 price as marked for each of the items recovered. Plaintiff did not testify as to the monetary value of the other items of memorabilia, the collectors items, and photos. Plaintiff testified that he could not value such items because they were a priceless part of his lifetime history and memories.

Defendant testified that she never had possession of any of these items and that all of the memorabilia items were in Plaintiff's storage unit or in the airport hangar storage area under Plaintiff's control. In similar manner, Defendant argues that these items are not listed as being in her possession on the 2002 Inventory; therefore, the Court should conclude that she never had possession of those items.

The Court finds again that the more credible testimony comes from Plaintiff. Plaintiff maintains that family photos, collectors items and memorabilia from Vietnam etc. were displayed in or stored at the marital residence and that these items were missing when he attempted to retrieve them. The Court finds that Defendant's testimony that she never saw family photos and doubts that they exist, implausible and lacking credibility. The Court also notes that Defendant appealed certain findings in the Final Decree concerning a fraudulent adoption, but failed to appeal the requirement that she turn over property that she now claims she never had and doubts ever existed. It seems illogical that one finding would be appealed but not another. Therefore, the Court finds that Defendant misappropriated these items of Plaintiff's personal property that were in the marital residence in Defendant's possession when Plaintiff vacated the residence. In addition, the evidence shows that Defendant disposed of at least 10

11

items in pawn shops or junk shops, which Plaintiff purchased back at $75.00 each. Defendant did not effectively counter this testimony. Simple math yields an amount of $750.00 as the amount of damages to compensate for the loss of these items. Therefore, the Court finds that the damages from the embezzlement of this property, and the non-dischargeable debt, is $ 750.00. When added to the $1,900.00 in damages for the firearms, the total non-dischargeable debt, therefore, is $2,650.00.

Because the Court finds that the debt is non-dischargeable under § 523(a)(4), the Court does not need to address the allegation that the same debt is non-dischargeable under § 523(a)(6). No evidence regarding denial of discharge under § 727 was presented and to the extent this action was pled, judgment will be granted in favor of Defendant. An appropriate judgment will be entered with this opinion.

*[signature]*

MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Damian L. Martinez
Attorney for Plaintiff
PO Box 2699
Las Cruces, NM 88004-2699

R Trey Arvizu, III
Attorney for Defendant
PO Box 1479
Las Cruces, NM 88004-1479